**STATE of Maine**

v.

**Phillip ZINCK.**

Supreme Judicial Court of Maine.

Argued Nov. 17, 1982.

Decided March 2, 1983.

Janet T. Mills, Dist. Atty. (orally), Auburn, for plaintiff.

Cloutier, Joyce, Dumas & David, Edward S. David (orally), Edward H. Cloutier, Livermore Falls, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

NICHOLS, Justice.

Again on this appeal we confront an issue as to what circumstances may warrant the admission of a witness' prior consistent statement under our Evidence Rule 801(d)(1).

Following a jury trial in Superior Court, Oxford County, the Defendant, Phillip Zinck, was convicted February 26, 1982, of one count each of burglary (17–A M.R.S.A. § 401), gross sexual misconduct (17–A M.R.S.A. § 253) and unlawful sexual contact (17–A M.R.S.A. § 255). On appeal here the Defendant argues that the Superior Court erred in admitting hearsay testimony from a prosecution witness.

We conclude that it was prejudicial error to admit this hearsay testimony. Accordingly, we are required to vacate the Defendant's convictions on all three counts and to remand the case for a new trial.

The Complainant, a high-school senior, testified that in the early morning hours of April 15, 1981, she was in bed asleep at her Rumford home when she was awakened by the sound of breaking glass. She was alone in the house because her father was in the hospital. She further testified that the eighteen-year-old Defendant entered her unlit bedroom, covered her face with a pillow to muffle the sound when she screamed, and forced her to engage in sexual intercourse for over two hours.

When the Complainant went to school that morning she met a cousin and schoolmate, and confided in the cousin the events of the night before. It appears that she did not tell the police, or anyone else, of the incident until five days later. At trial the Complainant explained that she had not told her father or the police earlier because she was afraid that the news would worsen her father's failing health and would subject her to the ill will of the Defendant and his friends.

At trial the Complainant was the first witness called by the State. She was extensively cross-examined by defense counsel concerning her past relations with the Defendant and also concerning her alleged requests that the Defendant procure drugs for her. Defense counsel specifically questioned whether she had taken drugs or alcohol earlier that evening. As its second witness the State called the Complainant's father, who testified that five days after the incident the Defendant came to his home and apologized to him for "raping" his daughter. The father further testified that the Defendant offered as an excuse for his actions that he had been on drugs and alcohol on the night of the encounter.

The Defendant's testimony as to the events on the night in question differs markedly from that of the Complainant. He testified that as he was driving past the Complainant's home in the late evening, he saw lights and decided to stop and see who was home. He felt free to enter the neighbor's home because he was a family friend. Upon entering the house he found the Complainant home. Although the Defendant admitted that he "maybe tried to kiss her and maybe felt her breasts," he testified that this was not unusual because he and the girl were very close friends and had fondled one another on previous occasions. He categorically denied that he had ever engaged in sexual intercourse with the Complainant. The Defendant further testified that he left the home shortly after he had arrived, returning to his own home by midnight.

As its third witness the State called the Complainant's cousin. Over defense counsel's objection that the testimony was hearsay, this cousin was permitted to repeat in detail the statements that the Complainant made to her at school on the morning immediately following the incident. Not only did this cousin testify that the Complainant had told her that the Defendant had raped her the night before, but the cousin was allowed to repeat in detail before the jury the Complainant's description of the encounter. In ruling on the admissibility of the cousin's testimony, the Superior Court decided that there had been an implied charge of recent fabrication by defense counsel and that the cousin's testimony was admissible under M.R.Evid. 801(d) for the limited purpose of rebutting the implied charge of recent fabrication.[1]

M.R.Evid. 801(d)(1), in language slightly different from the federal rule of like number, provides in pertinent part:

> A prior consistent statement by the declarant whether or not under oath, is admissible only to rebut an express or implied charge against him of recent fabrication or improper influence or motive.[2]

1. The following exchange took place prior to the admission of the cousin's testimony:

 [PROSECUTOR]: I think the last thing I want to inquire to is the substance of what she told [her cousin] for the reason that the implication of the question concerning—of the questions—I'm going to point to the question concerning—asking Phillip Zinck for drugs implies a recent fabrication and therefore I'm entitled to show a prior consistent statement under Rule 801.

 [THE COURT]: *Not so much the drugs as the* question pertaining to the prior relationship between the defendant and the witness. I don't think the drugs have much to do with it .... It seems to me that there is—from the opening statement of the defendant and from the cross-examination that there is an implied charge against this witness with a recent fabrication .... I think a recent fabrication is implied because of the opening statement and that would seem to indicate that the evidence will disclose—from the defendant will disclose a consensual [sic] relationship and that the questions of this witness as to prior sexual activity between this witness and the defendant and it seems to me that is an implied charge that this story being told by the witness is a recent fabrication—a recent fabrication between the time of the consensual [sic] act and the testimony and therefore I would allow inquiry not into the circumstances but the substance of the testimony between the witness and [the Complainant] only to rebut that charge.

2. The federal version of Evidence Rule 801(d)(1) differs from the Maine rule only in permitting substantive use of the prior consistent statement. Fed.R.Evid. 801(d)(1)(B) provides:

 (d) Statements which are not hearsay.—A statement is not hearsay if—

Under this rule a prior consistent statement of a declarant is admissible only if it tends to rebut a charge of recent fabrication or improper influence or motive. *State v. Reilly,* 446 A.2d 1125, 1130 (Me.1982); *State v. True,* 438 A.2d 460, 465 (Me.1981).[3] As we had previously noted:

> The rationale for this rule is that it allows the trier of fact to consider a statement made prior to the time any improper motive may have arisen, as bearing on the credibility of the testimony given in court.

*State v. Rolls,* 389 A.2d 824, 828 (Me.1978).[4] "Once the charge of fabrication has been made, only prior consistent statements that tend to rebut the charge, *i.e.,* those made prior to the time that the supposed motive to falsify arose, are admissible under M.R. Evid. 801(d)(1)." *State v. True,* 438 A.2d at 465. *See* Field & Murray, *Maine Evidence* § 801.4 at 192 (1976).[5]

■ Under M.R.Evid. 611, the Superior Court has broad discretion in its control of the mode and order of presentation of evidence; a declarant's prior consistent statement, however, should in no event be admitted before there has been a suggestion of recent falsification or improper motive. 4 J. Wigmore, *Evidence* § 1124 at 255. *See United States v. Strand,* 574 F.2d 993, 996–997 n. 4 (9th Cir.1978) (defense counsel may not allude to prior consistent statement when there has not yet been an attempt to impeach defendant); *United States v. Na-*

*varro-Varelas,* 541 F.2d 1331, 1334 (9th Cir. 1976), *cert. denied,* 429 U.S. 1045, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977) (proof of consistent statements valueless prior to impeachment of witness).

The failure of a trial court to clearly determine the nature of an alleged improper motive or an alleged recent fabrication may result in the admission of a prior statement which, although consistent with the witness' testimony at trial, tends neither to prove nor to disprove that the challenged testimony is the result of an improper motive or of a recent fabrication. *See e.g., State v. True,* 438 A.2d at 466; *United States v. Guevara,* 598 F.2d at 1100; *People v. Andino,* 99 Ill.App.3d at 956, 55 Ill.Dec. at 163, 425 N.E.2d at 1336 (1981). If the prior consistent statement was made after the time the alleged motive to fabricate arose, the evidence of that statement does not make the existence of recent fabrication or improper influence or motive more probable, or less probable, than it would be without the evidence. *State v. True,* 438 A.2d at 466. In that circumstance the evidence is not admissible under M.R.Evid. 801(d)(1).

■ We recently stated in *True* that the "cross-examination of a witness need not elicit evidence of self-contradiction before there arises an express or implied charge of fabrication." 438 A.2d at 465. Not every contradiction of a witness' testimony, however, will give rise to an implied

---

(1) Prior statement by witness—The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . .

(B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . .

**3.** *See generally,* S. Saltzburg & K. Redden, *Federal Rules of Evidence Manual* 521–24 (3d ed. 1982); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 801(d)(1)(B)[01] (1981 & Supp. 1982); 4 Wigmore, *Wigmore on Evidence* §§ 1128–1129 (Chadbourn rev. 1972 & Supp. 1982).

**4.** *See generally* Graham, *Prior Consistent Statements: Rule 801(d)(1)(B) of the Federal*

*Rules of Evidence, Critique and Proposal,* 30 Hastings L.J. 575, 587 (1979).

**5.** *See also United States v. Guevara,* 598 F.2d 1094, 1100 (7th Cir.1979); *United States v. Quinto,* 582 F.2d 224, 232–34 (2d Cir.1978); *People v. Andino,* 99 Ill.App.3d 952, 956, 55 Ill.Dec. 160, 163, 425 N.E.2d 1333, 1336 (1981); *State v. Reilly,* 446 A.2d 1125, 1130 (Me.1982); *People v. Melendez,* 55 N.Y.2d 445, 451, 449 N.Y.S.2d 946, 950, 434 N.E.2d 1324, 1328 (1982); *State v. Roy,* 436 A.2d 1090, 1093–94 (Vt.1981). For a minority view see: *United States v. Parry,* 649 F.2d 292, 296 (5th Cir. 1981); *United States v. Scholle,* 553 F.2d 1109, 1122 (8th Cir.1977); *Thomas v. State,* 92 Wis.2d 372, 383, 284 N.W.2d 917, 926 (1979). *See generally* C. McCormack, *Evidence* § 49, at 105 (2d ed. 1972).

charge of recent fabrication or improper motive.

> Where . . . a witness is impeached solely by the contradictory testimony of other witnesses, prior consistent statements are generally not admissible. *Wilson v. Jeffrey,* 328 Mass. 192, 102 N.E.2d 426 (1951). Leach & Liacos, [*Massachusetts Evidence* 131 (4th ed. 1967)].

*Commonwealth v. Reid,* —— Mass. ——, ——, Mass.Adv.Sh. (1981) 1803, 424 N.E.2d 495, 503 (1981).

 Certainly the mere suggestion in an opening statement by counsel that a party will attempt to controvert the facts sought to be established by the adverse party is insufficient to establish an implied charge of recent fabrication or improper motive. Were courts to find an implied charge in every denial by one party of the facts asserted by the opposing party, the exclusion from the definition of hearsay contained in Rule 801(d)(1) would become so broad that it would effectively swallow the hearsay rule in all cases in which a declarant had made a prior consistent statement.[6] The existence of an implied charge of recent fabrication or improper motive must be apparent from the evidence or from those inferences which fairly arise from counsel's cross-examination of a declarant. *See United States v. Parry,* 649 F.2d at 295–96. If an implied charge fairly arises from the line of questioning pursued by counsel, it is irrelevant whether counsel intended to imply fabrication. *United States v. Baron,* 602 F.2d 1248, 1253 (7th Cir.), *cert. denied,* 444 U.S. 967, 100 S.Ct. 456, 62 L.Ed.2d 380 (1979).

 In the case before us the Superior Court inferred that defense counsel's questions on cross-examination concerning the Complainant's past relations with the Defendant amounted to an implied charge of recent fabrication. In drawing that conclusion the Court erred. The circumstance of past intimate relations may be relevant as to whether the Complainant consented on the occasion in question, but the history of such relations does not necessarily imply either that the Complainant recently fabricated her testimony or that she testified for an improper motive. While it is true that if a complainant had consented and later fabricated a story because she felt shame, statements made to third parties before the story was fabricated might be admissible under M.R.Evid. 801(d)(1) to rebut the charge of recent fabrication. *See State v. Williams,* 131 Ariz. 211, 214, 639 P.2d 1036, 1039 (1982). On the record before us on this appeal, however, there is nothing whatsoever to suggest that this Complainant *fabricated* her story because she felt shame.

Any *motive* this Complainant may have had to fabricate her testimony would have existed both at the time she talked with her cousin and at the time of trial. The cousin's testimony, therefore, could not serve to rebut any implied charge that the Complainant had fabricated her trial testimony or testified at trial from an improper motive. In sum, the cousin's testimony should not have been admitted. *See State v. Reilly,* 446 A.2d at 1130; *State v. True,* 438 A.2d 466.

There remains the issue of whether the error in admitting this testimony by the cousin was reversible error. Certainly the Defendant's objection to her testimony was made clear at trial. Nevertheless, reversible error, we have observed, exists only if "a substantial right of the party is affected." *State v. True,* 438 A.2d at 467.

In the case before us we cannot say that it is highly probable that the error did not affect the verdict of the jury. We base that conclusion upon the recital of details of the encounter in the cousin's testimony. A different result might have been possible had the cousin's testimony merely confirmed that a complaint had been made to the cousin. *State v. True,* 438 A.2d at 464; *State v. Walton,* 432 A.2d 1275, 1277 (Me. 1981).

Our observation of sixty years ago is still true today:

---

**6.** *See* Travers, *Prior Consistent Statements,* 57 Neb.L.Rev. 974, 984 (1978).

Testimony in prosecutions for rape, that shortly after the alleged assault took place the prosecutrix related to a third party the same story in detail which she told on the witness stand cannot help but have some effect on the minds of a jury. Where the statement is not admissible ... it is almost inevitable that the admission of such testimony from the third party will prove prejudicial to the rights of the respondent.

*State v. King,* 123 Me. 256, 257–58, 122 A. 578 (1923).

We conclude that this Defendant was prejudiced by the Superior Court's error in admitting such testimony by the Complainant's cousin. We must, therefore, vacate the judgment as to all three counts.

Accordingly, it is unnecessary for us to reach the other issues raised by the Defendant, and we intimate no opinion whatsoever on them.

The entry is:

Appeal sustained.

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.