**STATE of Maine**

v.

**Scott SWAIN.**

Supreme Judicial Court of Maine.

Argued April 30, 1985.

Decided June 11, 1985.

Janet T. Mills, Dist. Atty., Kevin J. Regan, Asst. Dist. Atty. (orally), South Paris, for the State.

Robert E. Mullen (orally), Auburn, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

Scott Swain appeals from a judgment entered on a jury verdict in the Superior Court, Oxford County, convicting him of unlawful sexual contact, 17–A M.R.S.A. § 255. On appeal, the defendant alleges the Superior Court erred by admitting hearsay testimony from a prosecution witness, by allowing an unqualified expert to testify, and by permitting the prosecution to imply the defendant had a duty to call witnesses and produce documents in his own defense. The defendant also challenges the sufficiency of the evidence. We agree with the defendant that the Superior Court improperly admitted hearsay testimony and, therefore, do not consider these other allegations of error. Because we conclude that the error was not harmless, we vacate the conviction.

I.

The twelve year-old Complainant lived in a one-room house in South Paris with her mother, two half-brothers, and stepfather, Scott Swain. She testified that sometime during January 1983, she was sitting on the couch with her stepfather watching television, while her mother was asleep in a nearby chair. She further testified that this was the first time the defendant touched her "privates." There followed a series of sexual incidents between the two, which occurred about twice a week for over a year. These encounters took place in the family house and in their livestock shed. Not until the night of February 19–20, 1984, did the Complainant tell anyone about the incidents.

That night, on a school holiday visit with her natural father in Auburn, the Complainant told two young girlfriends of the incidents involving her and the defendant. One of the girls recounted the story in a note that was intercepted and eventually shown to the Complainant's father. He questioned his daughter about the note's contents, and contacted the South Paris Police Department. The Complainant was interviewed at the police station by John

Miller, a caseworker for the Department of Human Services. Rather than return to South Paris, the Complainant subsequently moved into her father's Auburn apartment.

The Complainant's father testified that, although he had been divorced from the girl's mother for ten years, he maintained a close relationship with his daughter. She frequently stayed with him on weekends. Beginning in late 1983 and early 1984, he detected a change in his daughter's behavior. Upon returning her to her mother's home, following her weekend visits to Auburn, he noticed she would begin to cry and say she did not want to stay in South Paris.

In addition, the jury heard testimony from several defense witnesses, neighbors and relatives of the Complainant, who maintained that they had observed no change in her behavior during the period of time in question. Dr. William Whitney, who administered a complete physical examination of the Complainant, testified that the exam disclosed no damage or abuse to the child's genitalia. John Miller testified as to matters discussed in his interview with the Complainant. The defendant also took the stand and denied the allegations against him.

## II.

The principal issue presented on this appeal is whether a portion of the Miller testimony is admissible as a prior consistent statement under Rule 801(d)(1) of the Maine Rules of Evidence. Over the objection of defense counsel, the court permitted the social worker to repeat the details of the activities described to him by the Complainant when she was interviewed at the South Paris Police Station. Miller testified that the Complainant had told him she had been sexually abused by her stepfather. He then repeated before the jury a detailed description of the sexual acts that had allegedly occurred between the Complainant and the defendant. After deciding there had been an implied charge of recent fabrication or improper influence, the Court concluded that Miller's testimony was admissible under M.R.Evid. 801(d)(1) for the limited purpose of rebutting that implied charge.

■ M.R.Evid. 801(d)(1) provides in pertinent part:

A prior consistent statement by the declarant whether or not under oath, is admissible only to rebut an express or implied charge against him of recent fabrication or improper influence or motive.

For the utterances of a victim of sexual abuse to be admissible under M.R.Evid. 801(d)(1), the victim's trial testimony must have been subjected to an express or implied charge of recent fabrication or improper influence or motive. *See State v. True,* 438 A.2d 460, 465 (Me.1981). Moreover, we have noted that "[i]f an implied charge fairly arises from the line of questioning pursued by counsel, it is irrelevant whether counsel intended to imply fabrication." *State v. Zinck,* 457 A.2d 422, 426 (Me.1983). The proponent of a prior consistent statement must demonstrate not only that it is being offered to rebut such a charge, but also that the statement is consistent with the in-court testimony of the witness and that it was made prior to the time the supposed motive to falsify arose. *State v. Fredette,* 462 A.2d 17, 22–23 (Me. 1983); *State v. Zinck,* 457 A.2d at 425; *State v. Reilly,* 446 A.2d 1125, 1130 (Me. 1982).

It is clear from the defense counsel's cross-examination of the Complainant that he established or was seeking to establish, *inter alia,* the following: (1) that the story to which the Complainant testified was untrue, (2) that her knowledge of sexual details was derived from some source other than sexual activity between her and the defendant, (3) that she and her circle of girlfriends frequently discussed "things that interest girls" such as rock music, TV, and boys, (4) that during visits to her father's Auburn apartment, she and her girlfriends had unsupervised access to the television set, (5) that some of the shows they watched in the late evening were X-rated,

and (6) that the charges against the defendant arose from a note (since destroyed), written by one of the young girls, summarizing the Complainant's version of her sexual encounters with the defendant.

From the beginning, the defendant contended that these encounters never took place and that the Complainant, for whatever reason, was lying. Clearly, the cross-examination of the Complainant was intended to suggest to the jury that her story was the product of a kind of adolescent fantasy competition. Although a child her age might otherwise be expected to be ignorant of sexual details, the defense counsel's questions raised the implication that she became knowledgeable concerning such matters as a result of watching the X-rated television shows to which she had access. There is little question that the cross-examination created the possible inference that the Complainant's trial testimony was a fabrication arising from an improper influence, specifically, the effect of X-rated programming upon the active, collective imagination of adolescent girls.

■ The trial court correctly concluded that the defense counsel's cross-examination opened the door for the use of a prior consistent statement by the prosecution. In addition, the statement offered by Miller was sufficiently consistent with the in-court testimony of the Complainant. Thus, two of the three requirements for the proper admission of a prior consistent statement were met.

The third requirement, however, that the statement was made prior to the time the supposed improper influence occurred, was not met. As the cross-examination and other evidence clearly demonstrated, the Complainant's "Auburn connection," to her friends and the attendant atmosphere, was established both before and during the time she lived in South Paris with her mother and stepfather. Her many visits to her father's apartment exposed her to the supposed improper influence, the combination of X-rated television programs and the fantasy games with her friends.[1] The defendant contends, and we agree, that the improper influence which could have inspired the Complainant to fabricate her story existed prior to the time she was interviewed by Miller on April 22, 1984. By admitting Miller's testimony, the court erred.

The question remains whether the admission of Miller's testimony, over the objection of defense counsel, was reversible error. We have noted that in this circumstance where the error was preserved, reversible error exists only if "a substantial right of the party is affected." *State v. True*, 438 A.2d at 467. Here, the challenged statement consists not merely of an acknowledgment of a previous communication, but a recital of the details of that communication. Given the nature of these details, we cannot say that it is highly probable that their recitation did not affect the jury's verdict. *See, e.g., State v. Zinck*, 457 A.2d at 426.

We conclude that the error in admitting the testimony of Miller affected a substantial right of the defendant. Accordingly, we vacate the judgment.

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.

---

1. The defense counsel phrased his initial question to the Complainant on the subject of X-rated TV shows as follows: "When you're down at your father's they have a TV?" The State would have us read this to apply solely to the period of time from February 20, 1984, to the day of trial, the time the Complainant lived exclusively with her natural father. We decline to interpret the question so narrowly.