**STATE of Maine**

v.

**Peter GRAVES.**

Supreme Judicial Court of Maine.

Argued May 11, 1992.

Decided June 5, 1992.

David W. Crook, Dist. Atty., William Baghdoyan (orally), Asst. Dist. Atty., Skowhegan, for the State.

Charles H. Veilleux (orally), Skowhegan, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

GLASSMAN, Justice.

Peter Graves appeals from the judgment entered in the Superior Court (Somerset County, *Chandler, J.*) on a jury verdict finding him guilty of rape in violation of 17–A M.R.S.A. § 252 (1983) [1] *repealed by*

---

**1.** 17–A M.R.S.A. § 252 provided in pertinent part:

1. A person is guilty of rape if he engages in sexual intercourse:

. . . .

B. With any person, not his spouse, and the person submits as a result of compulsion, as defined in section 251, subsection 1, paragraph E.

17–A M.R.S.A. § 251(1)(B), *repealed by* P.L. 1989, ch. 401, § A, 2, defined sexual intercourse as "any penetration of the female sex organ by the male sex organ. Emission is not required."
17–A M.R.S.A. § 251(1)(E) prior to amendment by P.L.1991, ch. 457, provided:
E. "Compulsion" means physical force, a threat of physical force or a combination thereof which makes a person unable to physically repel the actor or which produces in

P.L.1989, ch. 400, § A, 3 (effective September 30, 1989). We affirm the judgment.

■ Graves's contention that, because he had admitted to sexual intercourse with the victim and compulsion was the only remaining issue, it was obvious error for the trial court to admit evidence of the victim's pregnancy and of Graves's paternity is based on an erroneous premise. In response to the charge of rape contained in the indictment, Graves had entered a plea of not guilty. The investigating officer who interviewed Graves concerning the charge testified that Graves had consistently and emphatically denied that he had any sexual contact with the victim. The record is clear that it was only after the State had rested its case that Graves, while testifying in his own defense, admitted to sexual intercourse with the victim. When the evidence of the victim's pregnancy and the paternity of Graves was admitted, without objection by Graves, both elements of the offense of rape as defined by section 252 were at issue. The evidence was relevant to and probative of whether sexual intercourse, as defined by section 251(1)(B), had occurred. *See* M.R.Evid. 401. On the record in this case, we find no error, much less obvious error, in the court's admission of the challenged evidence.

■ Contrary to Graves's contention, we find no error in the court's admission of the testimony of the State's witness, Candace Paul, relating the victim's statements to her concerning the charged rape. We have previously stated that once a charge of recent fabrication has been made, a consistent statement made prior to the time the supposed motivation to falsify arose is admissible to rebut the charge. *State v. True*, 438 A.2d 460, 465 (Me.1981); *see also* M.R.Evid. 801(d)(1) (prior consistent statement by declarant whether or not under oath admissible to rebut express or implied charge of recent fabrication). Here, on the cross-examination of the victim, Graves attacked her testimony relating to the charged rape as being a recent fabrication to explain her pregnancy. By the *voir dire*

examination of Candace Paul out of the presence of the jurors, it was clear that the victim's statements to her concerning the charged rape were made one week after the alleged incident. This date preceded by approximately two months the date the victim testified as being the date she learned of her pregnancy. The basis being thus established for its admission, the trial court properly admitted Candace Paul's testimony.

For the first time on appeal Graves challenges the scope of Candace Paul's testimony. We have previously noted that the scope of admissible pretrial statements under Rule 801(d)(1) "turns upon the nature and extent of the impeachment efforts, and must be measured by the trial court's discretion." *State v. True*, 438 A.2d at 465 (quoting *State v. Lizotte*, 249 A.2d 874, 880 (Me.1969)). Nothing in this record supports Graves's contention that the court abused its discretion in this regard.

■ Graves next contends the court erroneously restricted the testimony of Candace Paul read back to the jury. After approximately three and one-half hours of deliberation and six hours before the jury reached a verdict, the jury made the following written request: "Could we have Candace Paul's testimony regarding when she first talked with [the victim] regarding the incident?" After consultation with the parties, and over the objection of Graves that all of her testimony should be read back, the court had read to the jury that portion of Candace Paul's testimony the court felt responded to the jury's request. Prior to the readback, the court read to the jury its request and advised the jury that the reporter would read that portion of Candace Paul's testimony the court felt was responsive to its request. The court instructed the jury to listen carefully to the testimony read back and stated that if it was not sufficiently responsive to its request "you can send back another note and we'll attempt to meet that." And again, after the readback, the court further instructed the jury that if they wished any additional tes-

that person a reasonable fear that death, serious bodily injury or kidnapping might be im-

minently inflicted upon that person or upon another human being.

timony to so advise the court. The record demonstrates the jury had no hesitancy in communicating with the court and did so a number of times thereafter on unrelated matters. Accordingly, on this record, we cannot say the court abused its discretion in not having Candace Paul's entire testimony read back to the jury. *See State v. Engstrom,* 453 A.2d 1170, 1173 (Me.1982) (within trial court's discretion to determine the testimony to be read to the jury in response to its inquiry).

Graves further contends that the court erred in not declaring a mistrial. Contrary to the assertion in his brief, the record discloses that Graves at no time moved for a mistrial, and nothing in this record indicates that there was a manifest necessity that would justify the court's *sua sponte* declaration of a mistrial. *See State v. Landry,* 600 A.2d 101, 102 (Me.1991) (power to declare mistrial to be exercised with greatest caution, under urgent circumstances and for plain and obvious causes).

Graves also contends that the victim's uncorroborated testimony on the issue of compulsion is insufficient to support the jury's conviction of rape. He argues that her testimony as to her conduct on the date of the charged offense is inconsistent with previous statements made by her and with that of three defense witnesses and is, therefore, incredible. We have previously stated that "[c]orroboration beyond the testimony of the prosecutrix is not required under our law to prove the crime of rape." *State v. Field,* 157 Me. 71, 76, 170 A.2d 167, 169 (1961). The law is well established that a basic function of a jury is to assess the credibility of a witness and the weight to be accorded the witness's testimony. Our review of the evidence is to determine "whether, based on that evidence viewed in the light most favorable to the prosecution, any trier of fact rationally could find beyond a reasonable doubt every element of the offense charged." *State v. Barry,* 495 A.2d 825, 826 (Me.1985). In the instant case, our review discloses that based on the victim's testimony the jury could rationally find beyond a reasonable doubt the elements of the charged offense.

We find no merit in Graves's further contentions that the court unduly influenced the production of a verdict or that the State's argument to the jury, to which Graves did not object, requires that we set aside the jury's verdict in this case.

The entry is:

Judgment affirmed.

All concurring.