STATE of Maine

v.

George PALMER, Sr.

Supreme Judicial Court of Maine.

Argued Nov. 3, 1992.
Decided April 29, 1993.

Stephanie Anderson, Dist. Atty., Jane Elizabeth Lee (orally), Asst. Dist. Atty., Portland, for the State.

Joel Vincent (orally), Scarborough Law Offices, Scarborough, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

COLLINS, Justice.

George Palmer appeals from the judgments entered in the Superior Court (Cumberland County, *Perkins, J.*) on jury verdicts finding him guilty of one count of gross sexual misconduct, 17–A M.R.S.A. § 253(1)(B) [1] *repealed by* P.L. 1989, ch. 401, § A, 4 (effective Sept. 30, 1989); two counts of gross sexual assault, 17–A M.R.S.A. § 253(1)(B) (Supp.1991); [2] and two counts of unlawful sexual contact, 17–A M.R.S.A. § 255(1)(C) (Supp.1991); [3] and from the sentences imposed. Palmer argues that his convictions should be vacated because, *inter alia,* the trial court committed several reversible evidentiary errors and the evidence was insufficient to support the convictions. We agree that the trial court erred in admitting evidence of Palmer's prior conduct in violation of M.R.Evid. 404(b) and we, therefore, vacate the convictions.

1. The pre-1989 version of 17–A M.R.S.A. § 253(1)(B) read in pertinent part, "A person is guilty of gross sexual misconduct ... [i]f he engages in a sexual act with another person and ... [t]he other person, not his spouse, has not in fact attained his 14th birthday."

2. 17–A M.R.S.A. § 253(1)(B) (Supp.1991) provides in relevant part, "A person is guilty of sexual assault if that person engages in a sexual act with another person and ... [t]he other person, not the actor's spouse, has not in fact attained the age of 14 years."

3. 17–A M.R.S.A. § 255(1)(C) (Supp.1991) provides, "A person is guilty of unlawful sexual contact if the person intentionally subjects another person to any sexual contact, and ... [t]he other person, not the actor's spouse, has not in fact attained the age of 14 years and the actor is at least 3 years older."

4. This testimony was elicited through the following exchange:

At the trial, the victim testified that Palmer sexually abused her starting when she was five years old and continuing until she was eleven. Dr. Lawrence Ricci, who examined the victim, testified that the victim had sustained injuries consistent with sexual abuse. Palmer, testifying on his own behalf, flatly denied the victim's allegations.

## I.

### *Evidentiary Challenges*

During its case-in-chief, the State elicited testimony from Palmer's wife, Rosemary Palmer, that she was in the process of divorcing Palmer and that she and the children lived for a time during the marriage in a shelter for abused women. [4] Ms. Palmer also testified, over Palmer's objection, that she was in court to obtain a restraining order when the victim disclosed the abuse to her.

Palmer contends that this evidence was barred by M.R.Evid. 404(b). [5] We agree. We find no merit in the State's contention that the evidence is admissible as background information. Although evidence about other crimes, wrongs, or acts of a defendant may be admitted to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, *see State v. Joubert,* 603 A.2d 861, 866 (Me.1992), it is not admissible as background information.

Q.... what was your address when you moved to Portland?
A. I stayed at the—
   [Objection to reference to shelter for abused women raised at sidebar]
THE COURT: Miss, again, would you respond to that question?
THE WITNESS: I stayed at the Abused Women's Shelter for a short period of time.

.   .   .   .   .

Q. And when you left the Abused Women's Shelter, did you move into another location in Portland?
A. Yes, I stayed at the City Shelter and then I moved into an apartment.

5. Rule 404(b) reads: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show he acted in conformity therewith." M.R.Evid. 404(b).

Since the error was preserved, Palmer's conviction must be vacated unless the error is harmless; i.e., it does not affect a substantial right of the defendant. *See* M.R.Crim.P. 52(a). We treat preserved error as harmless if we "[believe] it highly probable that the error did not affect the judgment." *State v. True,* 438 A.2d 460, 467 (Me.1981). Because of the prejudicial nature of the evidence admitted, its admission was not harmless and Palmer's convictions, therefore, must be vacated.

Although we vacate Palmer's convictions based on the trial court's admission of unfairly prejudicial evidence barred by M.R.Evid. 404(b), we address the other evidentiary issue raised by Palmer for "the guidance of the court and counsel in the event of a new trial." *State v. Reilly,* 446 A.2d 1125, 1130 (Me.1982). Palmer challenges the trial court's admission, over his objection, of the victim's testimony about her prior disclosures as hearsay evidence inadmissible pursuant to M.R.Evid. 801.[6] The challenged testimony is as follows:

Q. Did you tell people [about the abuse]?

A. Yes.

Q. Did you tell a lot of people?

A. Yes.

Q. And when you told a lot of people did you tell them that it was [the defendant] doing this to you?

A. Yes.

Q. And did you ever tell anybody that it was somebody other than [the defendant] that was doing it to you?

A. No.

. . . . .

Q. Who was the first person that you told?

A. My best friend.

... [victim continued to testify about others in whom she had allegedly confided about the abuse].

We reject the State's contention that this evidence is not hearsay evidence because the declarant was testifying at trial. Prior out-of-court statements made by a witness offered for the truth of the matter asserted are hearsay unless described in M.R.Evid. 801(d)(1) as not hearsay.[7] Nevertheless, an out-of-court statement made by a victim may be admissible on any of three distinct grounds: "(1) to show that in fact a complaint has been made, (2) to prove the truth of the matter asserted if the statement qualifies as an excited utterance, and (3) to rebut a charge of recent fabrication or improper motive." *State v. Dube,* 598 A.2d 742, 744 (Me.1991).

The victim's statements are admissible on none of these grounds. Initially, the "first complaint rule" admits only the "bare fact that a complaint has been made but not further details." *Id.* (citing *State v. True,* 438 A.2d at 464–65). Details that should not be disclosed include the victim's identification of the defendant. *See State v. Calor,* 585 A.2d 1385, 1387 (Me.1991). In the case at bar, prior testimony had already established that the victim made a complaint. Second, the statements were not excited utterances.

Finally, we reject the State's effort to characterize the testimony as rebutting an inferred charge of recent fabrication or improper influence. The existence of an implied charge of recent fabrication or improper influence or motive must be apparent from the evidence, those inferences which fairly arise from the evidence, or counsel's cross-examination of the declarant. *State v. Zinck,* 457 A.2d 422, 426

---

6. Rule 801(c) defines hearsay as follows: "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.Evid. 801(c).

7. M.R.Evid. 801(d)(1) provides:
   **(d) Statements Which Are Not Hearsay.** A statement is not hearsay if:
   (1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition; or (B) one of identification of a person made after perceiving him. A prior consistent statement by the declarant whether or not under oath, is admissible only to rebut an express or implied charge against him of recent fabrication or improper influence or motive.

(Me.1983). The State argues that Palmer through his cross-examination of Rosemary Palmer, the victim's mother, sought to raise the inference that the victim was improperly influenced by her mother's divorce from Palmer and her attempt to deny him custody of the victim and her siblings.[8] We are not convinced that Palmer's cross-examination of Rosemary Palmer fairly raised an inference of improper influence. Furthermore, "[t]he proponent of a prior consistent statement must demonstrate not only that it is being offered to rebut such a charge, but also that the statement is consistent with the in-court testimony of the witness and that it was made prior to the time the supposed motive to falsify arose." *State v. Swain*, 493 A.2d 1056, 1058 (Me. 1985); *see also State v. Phillipo*, 623 A.2d 1265, 1267 (Me.1993). In the case before us, the State failed to establish that the victim's prior consistent statements were made before Rosemary Palmer's divorce and custody battle.[9] Therefore, even if an implied charge of improper influence could be fairly inferred from the evidence of the divorce and custody battle, the admission of the victim's prior out-of-court statements was erroneous, *see* M.R.Evid. 801, because the State failed to establish a proper foundation for its admission. *See State v. Swain* 493 A.2d at 1059.

## II.

### *Sufficiency of the Evidence*

■ Palmer also asserts that the evidence before the jury was insufficient to support his convictions. "Our review of the evidence is to determine 'whether, based on that evidence viewed in the light most favorable to the prosecution, any trier of fact rationally could find beyond a rea-

sonable doubt every element of the offense charged.'" *State v. Graves*, 609 A.2d 717, 719 (Me.1992) (quoting *State v. Barry*, 495 A.2d 825, 826 (Me.1985)). As we have previously held, "[c]orroboration beyond the testimony of the prosecutrix is not required under our law to prove the crime of rape." *State v. Graves*, 609 A.2d at 719 (quoting *State v. Field*, 170 A.2d 167, 169 (Me. 1961)). After reviewing the evidence before the jury in the case at bar, we conclude that based on the victim's testimony, as well as that of Dr. Ricci who examined the victim, the jury rationally could find beyond a reasonable doubt the elements of the charged offenses.

## III.

### *Sentencing*

■ Although we need not reach the question of Palmer's sentences, we feel compelled to address Palmer's challenge to the 30–year sentence imposed for his conviction of gross sexual misconduct. This conviction was based on Palmer's conduct occurring between January 1988 and July 1988. Because the statute increasing the maximum possible sentence for a Class A crime from 20 to 40 years, 17–A M.R.S.A. § 1252(2)(A), did not become effective until July 1, 1989, it must not be applied to conduct occurring prior to this date.

The entry is:

Judgments vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

---

**8.** The portion of Palmer's cross-examination of Rosemary Palmer in question proceeded as follows:

> Q. Now, you testified on redirect that you went to court on the 16th of July to get a restraining order?
> A. Yes, I did.
> Q. And as a part of that restraining order you asked for custody of the children, didn't you?
>
> .    .    .    .    .
>
> A. Yes, I did.

> Q. You wanted the court to deny Mr. Palmer visitation with the children; isn't that correct?
> A. Yes.

**9.** The victim testified that she was eleven years old when Palmer stopped sexually assaulting her and that he stopped after she no longer lived with him. She also testified that she was "around eleven" when she first told anyone about the abuse. It is unclear from the record whether the prior consistent statements were made before the supposedly influential event, the divorce and custody battle, occurred.