**STATE of Maine**

v.

**Robert C. TRUE III.**

Supreme Judicial Court of Maine.

Argued Sept. 24, 1981.

Decided Dec. 17, 1981.

462

Henry N. Berry III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty., Martha Casey, Law Student Intern (orally), Portland, for plaintiff.

Edward W. Klein (orally), Portland, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

McKUSICK, Chief Justice.

After a jury trial in Superior Court, Cumberland County, defendant Robert C. True III was convicted of three counts of rape. 17–A M.R.S.A. § 252(1).[1] On his appeal, defendant raises several hearsay objections and challenges the sufficiency of the evidence. We affirm his convictions on Counts II and III and vacate his conviction on Count I.

The three prosecutrices are sisters of defendant. His sister Ruth testified as follows: On June 4, 1978, she accompanied defendant and his wife to the couple's home in South Portland. Ruth, who was sixteen years old at the time, admitted that she and defendant, then aged twenty, had engaged in sexual intercourse many times during the previous three years. After defendant's wife went upstairs, defendant began making sexual advances toward Ruth in the living room. When she attempted to leave the apartment, defendant pushed her down onto the couch, removed her pants, and put his hand over her mouth. As he engaged in sexual intercourse with Ruth, she tried to push herself away.

Alexena, the younger sister, testified that about five weeks later, on July 10, 1978, defendant appeared at their parents' home in Cumberland. Alexena, too, admitted that she and defendant had been engaging in sexual activities over the past several years. The parents were out of town on that date and Alexena, then thirteen years old, was home alone in her bathing suit watching television. Defendant approached her, attempted to remove the top portion of her bathing suit, then removed the bottom portion, and when Alexena fell to the floor, had sexual intercourse with her.

Alexena first told Nancy Perry, her school guidance counselor, of the incident in February 1979. Perry then referred Alexena to Karen Reinnert of the Maine Department of Human Services, to whom Alexena related the same story. Perry testified that Alexena told her that defendant "had sexually harassed her [Alexena] for a long time and that on that date [July 10, 1978] he had forced her into intercourse." Reinnert testified that Alexena told her that on July 10, 1978, "there was forcible intercourse ... between her brother, Robert, and herself."

Detective Joseph Madore of the Cumberland County Sheriff's Department, who interrogated defendant on June 4 and 5, 1980, testified that defendant admitted he had engaged in sexual intercourse with Alexena, although defendant also said that he had not had intercourse with her for at least five years.

The oldest sister, Lona, testified that late in the evening of June 1, 1980, she was reading in bed at her home in Yarmouth when defendant entered her bedroom. Defendant then began taking off his clothes, slapped Lona several times, got on top of her, moved the telephone out of her reach, and warned her not to struggle. Defendant wore a condom during intercourse, and after he bit Lona she stopped resisting. Two or three hours after the incident, Lona telephoned Gail Baker, a volunteer at the Portland Rape Crisis Center.

Baker testified that Lona told her, "... my brother was here, he raped, he forced himself on me." Baker then arranged for

---

1. On Counts I and III defendant was indicted for rape by force or threat, 17–A M.R.S.A. § 252(1)(B) (Supp. 1980), and on Count II, for statutory rape, 17–A M.R.S.A. § 252(1)(A). The judgment, however, identifies all three counts as violations of section 252(1)(B).

Count II was tried and submitted as a case of statutory rape. The error is thus clerical and this court orders by its mandate that the judgment be corrected accordingly: *See* M.R. Crim.P. 36.

Lona to see her regular gynecologist, Dr. Harry Bennert, the following morning. Dr. Bennert testified that his examination revealed no evidence of intercourse, a result he explained was consistent with the use of a condom. He also stated that he "... had received a phone call from a person by the name of Gail who indicated that Lona had told her that she had had a sexual experience with her brother, forcible, during the night." During his medical examination of Lona, she told him "that she had gone to bed at about 10:00 p. m., that sometime after that ... her brother appeared in her room ... and sexual intercourse occurred."

Defendant testified and denied that any of the three incidents had occurred. He admitted, however, that he had engaged in sexual intercourse with his sisters Ruth and Lona at earlier times over a period of years, but on the stand denied he had ever done so with Alexena. Three witnesses testified on defendant's behalf, placing him in South Portland until approximately 11:00 or 11:30 p. m. on the night of June 1, 1980, and defendant had told Detective Madore, when interrogated by him, that he had not left South Portland that night.

Lona went to the Cumberland County Sheriff's Department in the evening of June 2, 1980, and two days later the grand jury returned the instant indictment charging defendant with the rape of his sisters, Ruth, Alexena, and Lona on June 4 and July 10, 1978 and June 1, 1980, respectively.

### I. Hearsay Challenges

Defendant asserts that it was error to admit the hearsay testimony of Gail Baker describing the statements Lona made in her telephone call, the hearsay testimony of Dr. Bennert who examined Lona, and the hearsay testimony of Nancy Perry and Karen Reinnert describing the complaint Alexena made to them. We find that the trial court committed reversible error in admitting the hearsay testimony of Baker and Dr. Bennert relating to the alleged rape of Lona, but we find no reversible error in the admission of the testimony of Perry and Reinnert relating to the alleged rape of Alexena.

■ The extrajudicial statements of the prosecutrices are potentially admissible on three distinct grounds. The bare *fact* that a complaint has been made is admissible as part of the State's case in chief to forestall the natural assumption that in the absence of a complaint, nothing violent had occurred. The *details* of the complaint are not, however, admissible under this rule. *State v. King*, 123 Me. 256, 122 A. 578 (1923); *accord State v. Walton*, Me. 432 A.2d 1275, 1277 (1981); *State v. Ranger*, 149 Me. 52, 59, 98 A.2d 652, 655 (1953); *State v. Mulkern*, 85 Me. 106, 26 A. 1017 (1892). *See* 4 J. Wigmore, *Evidence* § 1135 (J. Chadbourn ed. 1972). Alternatively, a statement, including its details, may in appropriate circumstances be admissible under the "excited utterance" exception to the hearsay rule, M.R.Evid. 803(2).[2] Finally, a statement may be admissible under M.R.Evid. 801(d)(1)[3] for the limited purpose of rebutting an express or implied charge against the prosecutrix of recent fabrication or improper influence or motive.

■ For the fact of a complaint to be admissible under the rule of *State v. King, supra,* the complaint must have been made within a reasonable time after the alleged rape and the prosecutrix must take the stand at trial. *See also* 75 C.J.S. *Rape* § 53 (1952). Such evidence is admissible for the purpose of corroborating the victim's testimony, but not as proof that the crime was in fact committed. *See State v. King, supra* at 258, 122 A. at 579. Under that rule,

---

2. M.R.Evid. 803(2) excepts from the hearsay rule, even though the declarant is available as a witness:

> (2) *Excited utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

3. M.R.Evid. 801(d)(1) provides, in pertinent part:

> (1) *Prior statement by witness....* A prior consistent statement by the declarant whether or not under oath, is admissible only to rebut an express or implied charge against him of recent fabrication or improper influence or motive.

evidence that the complaint was of rape, *State v. Bragg*, 141 Me. 157, 161, 40 A.2d 1, 3 (1944), or attempted rape, 4 J. Wigmore, *Evidence* § 1136 (J. Chadbourn ed. 1972), and evidence of the time and place of the alleged rape, *id.*, are admissible in order to identify the complaint as being relevant to the charge on which the accused is being tried. However, further details, such as the identity of the perpetrator, are not admissible. *See State v. Galloway*, Me., 247 A.2d 104, 106 (1968).

We recently articulated in *State v. Walton, supra,* the findings the trial court must make before admitting a hearsay statement under the excited utterance exception. These are 1) that a startling event had occurred; 2) that the hearsay statement related to the startling event; and 3) that the hearsay statement was made while the declarant was under the stress of excitement caused by that event. M.R.Evid. 803(2). A statement given under the stress of anything other than the *excitement* caused by the startling event is not admissible. *State v. Walton, supra.*

 For a rape victim's utterances to be admissible under M.R.Evid. 801(d)(1), the victim's trial testimony must have been subjected to an express or implied charge of recent fabrication or improper influence or motive. Cross-examination of a witness need not elicit evidence of self-contradiction before there arises an express or implied charge of fabrication. An assertion or suggestion of fabrication may be sufficient to bring M.R.Evid. 801(d)(1) into operation. *See State v. Galloway, supra* at 105–06. *See also United States v. Herring,* 582 F.2d 535, 541 (10th Cir. 1978); *United States v. Majors,* 584 F.2d 110, 111 (5th Cir. 1978); *Slater v. Baker,* 301 N.W.2d 315, 319 (Minn. 1981).[4] Once the charge of fabrication has been made, only prior consistent statements

that tend to rebut the charge, *i.e.*, those made prior to the time that the supposed motive to falsify arose, are admissible under M.R.Evid. 801(d)(1). *See United States v. Quinto,* 582 F.2d 224, 234 (2d Cir.1978). *See also State v. Rolls,* Me., 389 A.2d 824, 828 (1978); Field & Murray, *Maine Evidence* § 801.4 at 192 (1976). The scope of admissible pretrial statements "turns upon the nature and extent of the impeachment efforts, and must be measured by the trial court's discretion." *State v. Lizotte,* Me., 249 A.2d 874, 880 (1969).

A. *Testimony of Gail Baker and Dr. Bennert Reporting Statements of Lona*

The presiding justice admitted Gail Baker's testimony describing Lona's complaint on the basis of his understanding that the complaint was made "within a . . . relatively short period of time" after the alleged rape. Thus, the court established a basis for admission, under the *King* principle, of the fact that Lona had made a complaint. Baker was permitted to testify, however, not only that Lona's complaint was of rape, but that Lona said defendant was the perpetrator and that he had "forced himself" on her. Those latter portions of Baker's testimony repeated details of Lona's complaint that may be admitted only if they qualify under either M.R.Evid. 803(2) ("excited utterance") or 801(d)(1) ("prior consistent statement").

 Lona's complaint does not qualify as an admissible excited utterance. Lona testified that after defendant left her house she "cried a lot and thought about stuff and got really upset and thought that this can't go on and on, and so it has got to end sometime." Not until two or three hours after the alleged rape did Lona telephone Baker. The complaint was thus a "product of conscious reflection," *State v. Williams,*

4. Those above-cited cases applied the federal version (adopted by Minnesota) of Evidence Rule 801(d)(1), which differs from the Maine rule only in permitting substantive use of the prior consistent statement. F.R.Evid. 801(d)(1)(B) provides:

 (d) Statements which are not hearsay.—A statement is not hearsay if—

 (1) *Prior statement by witness.*—The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . .

 (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, . . . .

Me., 395 A.2d 1158, 1163 (1978), not made "before there has been time to contrive and misrepresent," *State v. Ellis,* Me., 297 A.2d 91, 94 (1972), and not clearly caused by the stress of excitement, as opposed to the "stress of conscience, of guilt, or of fear," *State v. Walton, supra* at 1277. We therefore find the complaint inadmissible under the excited utterance exception to the hearsay rule. M.R.Evid. 803(2).

■ Finally, we consider admissibility of the complaint under M.R.Evid. 801(d)(1). Defense counsel's vigorous cross-examination of Lona, which included repeated references to the alleged consensual nature of the long history of admitted sexual relations between Lona and defendant and questions as to Lona's alleged failure to report the prior incidents when they occurred, created a possible inference that Lona's trial testimony was recently fabricated or arose from an improper motive, namely, to avoid criminal liability herself for incest.[5] The prosecutor would thus have a sound basis for offering prior consistent statements of Lona that served the limited purpose of rebutting defendant's implied charge. By its nature, however, Baker's testimony repeating Lona's complaint does not operate to rebut defense counsel's implication that Lona fabricated her claim that defendant forcibly had sexual intercourse with her on June 1, 1980. The complaint was made shortly after the alleged rape, well *after* the time when Lona allegedly would have developed the motive to avoid criminal liability for incest. All of Lona's statements—starting with that to Gail Baker in the early morning hours of June 2, 1980, followed by that to Dr. Bennert later that forenoon and by that to the sheriff's department that evening—were prior statements consistent with her trial testimony. However, evidence of those statements does not, in the words of M.R. Evid. 401, "make the existence of [recent fabrication or improper influence or motive] more probable or less probable than it would be without the evidence." All one can say is that Lona has told a consistent story since the early morning hours of June 2, 1980.

Baker's hearsay testimony therefore was inadmissible on any basis. Moreover, because Baker's testimony was inadmissible, Dr. Bennert's testimony repeating those statements constituted double hearsay inadmissible under M.R.Evid. 805.[6]

■ In addition, Dr. Bennert testified without objection that during Lona's medical examination on June 2, 1980, she described not only the time and place of the alleged rape, but the identity of the perpetrator as well. For the reasons discussed above with regard to Gail Baker's testimony, the doctor's hearsay testimony is inadmissible as a fact of complaint, an excited utterance, or a prior consistent statement

---

5. Defendant's cross-examination of Lona included the following:

> [Defense Counsel] Q Well, in all fairness, . . . wouldn't you say that all these past events between you and Robert True, including the one in which you complained were actual consent, actual incest rather than rape; wouldn't that be fair to say?
> A No, it would not be fair to say that.
> Q You mean you want this jury to believe that for 11 years an intelligent woman, as you appear to be, would go on being raped constantly without taking effects or any effective steps in order to stop this relationship?
> A I took numerous steps to try and stop this relationship but I was not believed by doctors or the courts or anyone. No one wanted to believe me.
> Q The doctors, even Dr. Bennert, the last one, referred to this relationship, everybody has referred to this relationship as an incestuous relationship; have they not? That's why they haven't done anything about it?
> A I do not know about what they have said.
> . . . .
> Q Now while you were carrying on this incestuous relationship with your brother did anybody ever tell you that, if it was indeed incestuous, that you were equally as guilty as he for indulging in any activity?
> A No, because I didn't want him to do this to me.

6. M.R.Evid. 805 provides:

> Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.

rebutting defendant's implied charge of fabrication or improper motive. Nor is the statement admissible under M.R.Evid. 803(4) [7] as a statement made for medical diagnosis or treatment. That it was intercourse that caused Lona to see the doctor and that it occurred the previous evening are facts reasonably pertinent to the diagnosis and treatment and bring the testimony within the 803(4) exception to the hearsay rule. But the identity of the perpetrator and the scene of the alleged rape do not fall within that hearsay exception.

Defendant did not preserve his objection to the inadmissible Bennert and Baker hearsay testimony. At no time did he object to Dr. Bennert's repeating what Gail Baker and Lona told him. Defense counsel did object to the State's question put to Baker, "What did she call you about?" However, there was no objection once the question was rephrased to ask, "What did she say to you when she called?" [8] Baker was then allowed, without objection, to testify, "She said my brother was here, he raped, he forced himself on me." The testimony of Dr. Bennert and Gail Baker came in without defendant's preserving for appeal any objection to its inadmissibility as hearsay. Defendant's conviction must therefore stand unless the receipt of that inadmissible hearsay testimony constituted "obvious error affecting substantial rights." [9] M.R.Evid. 103(d); Field & Murray, *Maine Evidence* § 103.6 (1976). *See also* M.R.Crim.P. 52(b). *Cf.* F.R.Evid. 103(d) and F.R.Crim.P. 52(b) ("plain error").

The "obvious error" test calls for the reviewing court to apply its best judgment to all the circumstances of the case at hand to determine whether inadmissible evidence received at trial without objection was in its probable effect upon the jury "a seriously prejudicial error tending to produce manifest injustice." *State v. Baker*, Me., 409 A.2d 216, 219 (1979). Under M.R. Evid. 103(a) relating to the erroneous admission of evidence where the party *does* object at trial, reversible error exists only if "a substantial right of the party is affected"; such is the Evidence Rules' formulation of the traditional "harmless error" test. *See* J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 103[06] (1980). The test of whether an error is or is not harmless, *i.e.*, whether it does not or does affect a substantial right of the party, is itself difficult to articulate. *Id.; see also* R. Traynor, *The Riddle of Harmless Error* 35, 49–51 (1970) (preserved error should be treated as harmless if "the appellate court believes it highly probable that the error did not affect the judgment"). It is even more difficult to articulate what is "obvious error affecting substantial rights" under M.R.Evid. 103(d). *See* Field & Murray, *supra*, § 103.6. But, by adding the requirement that for reversal an unpreserved error be "obvious," Rule 103(d) mandates that the 103(d) test "encompasses more than the harmless error rule." *Id.* at 11. The difference in the language used in M.R.Evid. 103(a) and 103(d) suggests a significant distinction in degree drawn between i) errors objected to below that, if prejudicial, automatically result in reversal, and ii) other errors not objected to below that must be highly prejudicial before they will give rise to a rever-

---

7. M.R.Evid. 803(4) excepts from the hearsay rule:

> (4) *Statements for purposes of medical diagnosis or treatment.* Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

8. The following exchange is contained in the record:

> [DEFENSE COUNSEL]: Just for the record, your Honor, his question was what did she

call you in reference to. Now I don't think that is admissible.

> THE COURT: All right, testify to what she said.
> [PROSECUTOR]: All right.
> THE COURT: Rephrase your question.
> [PROSECUTOR]: I will.
> (Open Court.)
> [PROSECUTOR]: What did she say to you when she called?

9. The federal rules from which both M.R.Evid. 103(d) and M.R.Crim.P. 52(b) were derived used the term "plain error." F.R.Evid. 103(d); F.R.Crim.P. 52(b).

sal. *Cf.* 8A *Moore's Federal Practice* ¶ 52.-02 (1981) (discussing F.R.Crim.P. 52).

■ The fact that defense counsel at trial did not object to the admission of the Baker and Bennert hearsay testimony does not foreclose this court taking notice of that error on appeal. In the past the Law Court, at least in civil cases, has said:

> Evidence, even though legally inadmissible, received without objection is regarded as in the case by consent, and, if relevant, must be considered by the trier of the facts.

*Watkins Co. v. Brown*, 134 Me. 473, 474, 188 A. 212, 212 (1936); *see also Goldthwaite v. Sheraton Restaurant*, 154 Me. 214, 221, 145 A.2d 362, 366 (1958) (treatises admitted by express consent). Substantial authority in other jurisdictions also treats the admission without objection of inadmissible hearsay as no error at all, leaving the only question one of weight to be determined by the factfinder. *See, e.g., Hayes v. State*, 581 P.2d 221, 222 (Alaska 1978); *State v. Hamilton*, 268 N.W.2d 56, 57, 63 (Minn.1978). *See generally* C. McCormick, *Evidence* § 54 (2d ed. 1972); 2 *Wharton's Criminal Evidence* § 273 (13th ed. 1972). It is said that the inadmissibility of hearsay evidence is waived by failure to object thereto, *see* 30 Am.Jur.2d *Evidence* § 1103 (1967); or such unobjected-to hearsay is treated as "consent evidence," *see Watkins Co. v. Brown, supra.* We are unwilling to declare an equivalence between otherwise inadmissible hearsay that goes in evidence by actual waiver or express consent, and inadmissible hearsay that is merely not objected to at trial. It is true that trial counsel's failure to object to the inadmissible evidence, whether as a result of tactical decision or oversight, will itself be a consideration in determining whether the error is obvious and highly prejudicial. But M.R.Evid. 103(d), which specifically governs the review of errors in the admission of evidence that "were not brought to the attention of the court," can-

not be reconciled with a "waiver" or "consent evidence" treatment of unobjected-to hearsay. Article VIII of the Evidence Rules defines what is inadmissible hearsay evidence. M.R.Evid. 103 states the consequences on appeal of the trial court's admitting hearsay made inadmissible by Article VIII. Even if objected to, the error may be harmless and under M.R.Evid. 103(a) therefore not a ground for a reversal. If not objected to, the error in receiving inadmissible hearsay will be ground for reversal only under the stringent "obvious error" standard of M.R.Evid. 103(d), but nonetheless such error will by no means be completely beyond appellate review in the way that true consent evidence is.[10]

■ The Law Court's power under Rule 103(d) "is exercised cautiously and only when necessary to prevent a clear miscarriage of justice." Field & Murray, *supra* at 3 (Advisers' Note). Before our adoption of the Evidence Rules, the Law Court had developed the demanding "manifest error—serious injustice" exception to the "principle, generally acknowledged as necessary to further a sound appellate practice, that in a direct appeal from a judgment of conviction the appellate tribunal will deny cognizance in due course to trial errors not adequately saved at the trial level." *State v. Pomerleau*, Me., 363 A.2d 692, 696 (1976). As the Law Court had said in *State v. Langley*, Me., 242 A.2d 688, 690 (1968):

> An exception is made only when the error complained of is so highly prejudicial and so taints the proceeding as virtually to deprive the aggrieved party of a fair trial.

*See also State v. Rand*, 156 Me. 81, 83, 161 A.2d 852, 853 (1960); *State v. Wright*, 128 Me. 404, 406, 148 A. 141, 142 (1929). The term "obvious errors affecting substantial rights" used in M.R.Evid. 103(d), as well as in M.R.Crim.P. 52(b), imposes exactly the same demanding test as was laid down in

---

10. Rejection of the implied waiver or consent evidence theory does not necessarily mean, however, that any different result will follow. The outcome on appeal is likely to be the same, particularly in civil cases where the "obvious error" rule is almost never applied to unpreserved errors in the admission of evidence. *See* C. McCormick, *Evidence* § 52 at 120 (2d ed. 1972).

Maine case law by the "manifest error—serious injustice" standard. All the alternative terms emphasize the great reluctance with which an appellate court will reverse a trial court judgment on the basis of an error that was not called to the attention of the judge at the time it occurred. There exists, however, no automatic formula to identify the case where the reviewing court will overcome that reluctance. The particular circumstances, weighed with careful judgment, will determine whether the obviousness of the error and the seriousness of the injustice done to the defendant thereby are so great the Law Court cannot in good conscience let the conviction stand.

 Such is, we conclude, the case with defendant's conviction for the alleged rape of his oldest sister Lona. We are here satisfied that the receipt in evidence of the inadmissible hearsay testimony of what Lona said hours after the alleged rape was so highly prejudicial that it constitutes "obvious error affecting substantial rights." In the circumstances of this case we must interpose our considered judgment that defendant is entitled to a new trial. Faced with incarceration for up to 20 years, defendant was charged with having raped by force his 23-year-old sister Lona, who admitted to having had consensual sexual intercourse with him over a period of ten years. Whether defendant compelled his sister Lona to submit to the alleged intercourse on June 1, 1980, "by force and against [her] will" was for the jury the critical issue of fact—and, as a practical matter, perhaps the only serious issue of fact given the admitted intersibling intercourse over a long time in the past. The only direct evidence on the point was the testimony of the prosecutrix herself. Beyond her testimony, the record contains only the hearsay testimony of Dr. Bennert and Gail Baker, which consisted of nothing more than a repetition of the prosecutrix's claim that rape had occurred. That hearsay appearing to confirm the prosecutrix's story, coming as it did from the mouths of disinterested third parties, would almost certainly count heavily with any jury. As this court said in *State v. King, supra:*

> Testimony in prosecutions for rape, that shortly after the alleged assault took place the prosecutrix related to a third party the same story in detail which she told on the witness stand, cannot help but have some effect on the minds of a jury. Where the statement is not admissible as a part of the res gestae,[11] nor is within any of the rules permitting hearsay evidence, it is almost inevitable that the admission of such testimony from the third party will prove prejudicial to the rights of the respondent.

123 Me. at 257–58, 122 A. at 578. The combined impact on the jurors' minds of this hearsay testimony corroborating the details of Lona's testimony surely affected substantial rights of defendant. Although the testimony of the prosecutrix alone may be sufficient to support a rape conviction, *State v. Foley*, Me., 392 A.2d 1094, 1096 (1978), where, as in the instant case, the prosecutrix testifies, and the court then permits *improper corroboration of her testimony by two independent witnesses*, we cannot say that the jury would have found defendant guilty in the absence of that plainly inadmissible hearsay. Particularly in a case where so much rode upon the testimony of a single witness, whose credibility on the critical issue of force was inherently suspect, and where the offense for which defendant was being tried was so serious, we are left with a settled conviction that admission of that hearsay fundamentally deprived defendant of the fair trial to which he was entitled. We therefore must vacate the judgment on Count I charging defendant with the rape of Lona.

B. *Testimony of Nancy Perry and Karen Reinnert Reporting Statements of Alexena*

 Defendant argues, in addition, that the presiding justice erroneously admitted

---

11. The *King* court was obviously referring to the excited utterance exception to the hearsay rule. The term "res gestae" is no longer an approved part of our legal lexicon. *See State*

*v. Hafford*, Me., 410 A.2d 219, 220–21 (1980); *see also State v. Walton*, Me., 432 A.2d 1275, 1277 (1981).

the testimony of Nancy Perry and Karen Reinnert repeating Alexena's complaints. Her complaints, made in February of 1979, seven months after the alleged rape, were not made within a reasonable time after the incident and, as repeated by Perry and Reinnert, included details of the incident. Thus, the fact of those complaints was inadmissible under *State v. King, supra*. And those complaints obviously were not admissible as excited utterances. M.R.Evid. 803(2).

■ However, the testimony of Perry and Reinnert was admissible under M.R. Evid. 801(d)(1) to rebut defendant's charge that Alexena had recently fabricated her testimony as to the events of July 10, 1978. Its admissibility "turns upon the nature and scope of the impeachment efforts." *State v. Lizotte, supra* at 880. Trial counsel on cross-examination elicited from Alexena an admission that she had made her complaint to the district attorney only after talking with her sisters. Counsel also charged on cross-examination that Lona had told Alexena what to say at trial.[12] Alexena's prior consistent statements in February of 1979 went directly to refute the implied charge that she with her sisters had contrived the story she told in June 1980 and subsequently. Alexena complained to her school guidance counselor and the social

worker long before the time when, by defense counsel's implied charge, the three sisters contrived their story to the sheriff's department and Lona allegedly told Alexena what to say on the stand. Alexena's statements in February 1979, though hearsay, were directly relevant for the limited purpose of contradicting the charge that, under her sisters' leadership and before talking with the authorities in June 1980, she had made up the story of having been raped on July 10, 1978.

Thus, Alexena's consistent statements made long before the time she is charged with fabricating her story to the police under her sisters' improper influence contrast sharply with Lona's consistent statement made at a time when she had the same incentive to falsify as at trial. Alexena's prior consistent statements raise a natural inference rebutting defense counsel's charge of improper influence. In contrast, Lona's prior consistent statements do not naturally rebut the claim she fabricated her story to protect herself from an incest charge.

■ Even if Alexena's prior consistent statements were admissible, defendant contends that the presiding justice erred by failing to instruct the jury that those statements were admissible only to rebut the

**12.** Defendant's cross-examination of Alexena included the following:

Q How long have you been living away from your parents?
A Since June of this year—last year.
. . . .
Q And that's when the people started talking to you about what happened; right?
A Yes.
Q As a matter of fact, you didn't go to them, they came to you, to talk to you about you and your brother; is that correct?
A Yes.
Q And that's because that you and Lona or Lorna, whatever her name is, and the other sister got together about this situation; is that correct?
A Yes, it is.
Q And was it Lona's idea to get together about what was going on?
A Not really.
. . . .

Q And did Lona tell you that she had complained about your brother when she started to talk to you about this?
A Yes.
Q And did Lona take you to the Sheriff's office?
A Yep.
. . . .
Q Now, Miss True, isn't it true that your sister [Lona] told you what to say here today?
A No, it is not true.
Q It is not true?
A No.
Q Why do you militate when I ask you that question?
A Lona did not tell me what to do.
Q Did somebody tell you if I asked you that question to come right back and say no?
A No.
Q Nobody told you what to say?
A No.
Q You're sure of that?
A Positive.

impeachment of the witness, and not to establish the truth of the matter asserted. Because defendant at no time requested the court to give a limiting instruction pursuant to M.R.Evid. 801(d)(1), we review for reversible error only under an obvious error standard, which we have discussed in detail above. M.R.Evid. 103(d); *see also* M.R. Crim.P. 52(b). Defendant's experienced trial counsel may well have made a studied tactical decision to refrain from asking the justice to give the limiting instruction for fear of driving home in the minds of the jurors the force of Perry's and Reinnert's testimony. *See State v. Rogers*, Me., 389 A.2d 36, 38 (1978). We cannot say that the limiting instruction would be so obviously more advantageous that it was manifestly unjust to defendant for the trial justice to fail to give the limiting instruction on his own initiative.

There was no reversible error in admitting evidence of Alexena's February 1979 reports of being raped by defendant the proceeding July 10th.

## II. *Sufficiency of the Evidence*

Finally, defendant argues that the evidence before the jury was insufficient to support his convictions. We cannot agree. "When a conviction is challenged on the ground of insufficiency of the evidence, the Law Court will set the conviction aside only if no trier of fact could rationally find proof of guilt beyond a reasonable doubt, any doubts about the correctness of the jury's determination of factual questions being resolved in favor of the verdict." *State of Theriault*, Me., 425 A.2d 986, 988 (1981).

■■■ The record reveals adequate evidence from which the jury could have concluded beyond a reasonable doubt that defendant was guilty on the two counts involving Alexena and Ruth. The uncorroborated testimony of a prosecutrix is suffi-cient to support a rape conviction unless that testimony is inherently improbable or incredible and does not meet the test of common sense. *State v. Foley, supra* at 1096. In addition to the credible testimony of the prosecutrices, the jury was able to consider the corroborating testimony of the State's witnesses, Nancy Perry and Karen Reinnert, with regard to the alleged rape of Alexena.

■■■ In particular, defendant urges on appeal that there is insufficient evidence on the record to support a conclusion that actual force was used to overcome the will of his sister Ruth.[13] Whether the physical force used by defendant caused her to submit to sexual intercourse is a question of fact. From Ruth's testimony the jury could have concluded beyond a reasonable doubt that the physical actions defendant used to overcome her resistance compelled her to submit. On the record it was clearly a fact issue for the jury to resolve.

The entry must be:

Judgment of conviction on Count I vacated.

Judgment on Count II amended to state violation of 17–A M.R.S.A. § 252(1)(A). Judgment of conviction on Count II as amended and on Count III affirmed.

All concurring.

---

13. Force is not a necessary element for statutory rape, involving a victim under 14 years of age. 17–A M.R.S.A. § 252(1)(A) (Supp.1980). 17–A M.R.S.A. § 252(1)(B)(1) provides, however:

 1. A person is guilty of rape if he engages in sexual intercourse:

. . . .

 B. With any person, not his spouse, and he compels such person to submit:

 (1) by force and against the person's will;