STATE of Maine

v.

Timothy RONAN.

Supreme Judicial Court of Maine.

Argued Sept. 16, 1988.
Decided Dec. 14, 1988.

David W. Crook, Dist. Atty., Pamela Ames (orally), Asst. Dist. Atty., Paul J. Giguere, Legal Intern, Augusta, for plaintiff.

Michael S. Popkin (orally), Jim Mitchell & Jed Davis, P.A., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

ROBERTS, Justice.

Timothy Ronan appeals from his convictions under 29 M.R.S.A. §§ 2184 (operating after suspension) and 2292 (habitual offender) following a jury trial in Superior Court, Kennebec County (*Brody, C.J.*). Ronan challenges the admission of the testimony of a prosecution witness on the grounds of undue surprise and lack of foundation. He also questions the jury instructions and the sufficiency of the evidence to support the verdict. We affirm the judgment.

### I. Facts and Procedure

At 7:30 p.m. on April 23, 1987, Officer Allen Johnston of the Augusta Police Department received a call to check on an abandoned vehicle. Accompanied by Reserve Officer Williams, Johnston proceeded to the location of the vehicle in question. At that moment, an Oldsmobile belonging to Ronan approached from the opposite direction and pulled into the driveway of Ronan's residence. The officer pulled in behind the automobile hoping to ask the driver if he knew whether the vehicle across the street was abandoned, but Ronan leaped from the car, leaving the engine running, and dashed off behind the house into the woods.

Officer Johnston stationed his reserve officer between the house and garage, followed the fleeing man, and finally returned to the police car to call for backup and canine units. When the canine unit, comprised of Officer Paul Ferland and his dog, arrived, the dog led the officers to Ronan, who was hiding in a gully behind the house. The officers then placed him under arrest.

At trial, when Ferland was about to take the stand, the defense objected on the ground that the State had failed to comply with discovery. The request that the testimony be excluded was denied. The defense made additional motions at the conclusion of Ferland's testimony, requesting that the testimony be stricken for want of proper foundation, a motion the trial court also denied.

The defense called the defendant and a number of alibi witnesses, each of whom disputed the State's contention that Ronan was driving the automobile. The defense turned primarily on the assertion that another man, not the defendant, was driving Ronan's car that night. According to Ronan's testimony he watched the episode from his home, then went outside into the woods, and ducked into the gully to hide.

### II. Discovery violation

At the request of a defendant, the names and addresses of expert witnesses for the State are discoverable. M.R.Crim. P. 16(b)(2)(C). Sanctions for failure to comply with this rule include "requiring the attorney for the State to comply, granting the defendant additional time or a continuance, relieving the defendant from making a disclosure required by Rule 16A, prohibiting the attorney for the State from introducing specified evidence and dismissing the charges with prejudice." M.R.Crim.P. 16(d).

The record is unclear whether defense counsel actually received a police report indicating that Ronan was apprehended with the help of a tracking dog. However, it is clear that defense counsel knew two days before trial that the police officer who handled the dog would testify. The defense sought, as a sole remedy, the exclusion of Ferland's testimony rather than a continuance. Ronan has not shown that the trial court's offer of additional time was insufficient to remedy any possible prejudice to the defense. Because the ruling was within the discretion of the trial court, we find no error in denying the motion to exclude Ferland's testimony. *See State v. Reeves*, 499 A.2d 130 (Me. 1985).

### III. Motion to Strike

Throughout Ferland's testimony, the defense made but a single objection: that the officer was unqualified to testify about the manner in which human beings leave a scent. That issue has not been pursued on appeal. After Ferland had been excused as a witness and the State had rested its case in chief, the defense moved to strike the officer's testimony based on a lack of foundation for that testimony. The defense

then presented the additional ground that the evidence lacked sufficient foundation concerning the dog's pedigree and training. In these circumstances, the motion to strike was not a timely objection. Consequently, we review the record under M.R. Crim.P. 52(b), and M.R.Evid. 103(d) for obvious error.

 The review for obvious error is "exercised cautiously and only when necessary to prevent a clear miscarriage of justice." *State v. True*, 438 A.2d 460, 468 (Me.1981); Field & Murray, *Maine Evidence*, § 103.6, at 18 (1987). The "manifest error-serious injustice" standard of review recognizes error only when, "the error complained of is so highly prejudicial and so taints the proceeding as virtually to deprive the aggrieved party of a fair trial." *True*, 438 A.2d at 468; *State v. Langley*, 242 A.2d 688, 690 (Me.1968).

 Officer Ferland's testimony, if erroneously admitted, did not constitute obvious error. The State did not depend upon the tracking evidence to identify the defendant as the operator of the automobile. The car belonged to Timothy Ronan, a man of his appearance was seen leaving it, and shortly thereafter Ronan was discovered in a ditch behind the house. A jury would be likely to conclude Ronan was driving the automobile without any evidence about the tracking dog. We cannot say that the testimony of the officer in question deprived the appellant of a fair trial.

### IV. *Sufficiency of the evidence*

 The appellant suggests that, in any case, the evidence upon which he was convicted is insufficient to support the verdict. In reviewing the sufficiency of the evidence, the Court must view the evidence in a light most favorable to the prevailing party. *State v. Lovejoy*, 493 A.2d 1035, 1037 (Me.1985); *State v. Barry*, 495 A.2d 825, 826 (Me.1985). We must then determine whether any trier of fact rationally could find each element of the offense was proved beyond a reasonable doubt. *Lovejoy*, 493 A.2d at 1037; *Barry*, 495 A.2d at 826.

Witnesses for the State and the appellant were in sharp disagreement over the events of April 23. A jury could rationally believe from the evidence that Ronan was, in fact, driving his own car that evening and, upon seeing the officers, abandoned the vehicle in his driveway and fled into the woods. The credibility of witnesses is for the jury to determine.

### V. *Jury instructions*

 Finally, the appellant questions the propriety of the trial court's jury instruction on proof beyond a reasonable doubt. The presiding justice, in describing the burden of proof, stated:

Now, while the burden of proof, beyond a reasonable doubt, is a heavy burden, it is, of course, not necessary that the State's proof exclude all possible doubt. If that were the criteria [sic] there would be very few convictions.

We conclude that the reference to convictions is so oblique that it is "highly probable" that it did not affect the verdict of the jury. *True*, 438 A.2d at 467. We specifically discourage, however, any language which refers to the frequency of convictions in describing the "reasonable doubt" standard. Although the language falls short of "putting a premium on convictions," as the appellant suggests, even implying the desirability of guilty verdicts is inappropriate in jury instructions.

The entry is:

Judgment affirmed.

All concurring.