STATE of Maine

v.

**Michael BAIRD.**

Supreme Judicial Court of Maine.

Argued March 17, 1989.

Decided April 10, 1989.

Rae Ann French, Amy M. Homans (orally), Michael Westcott, Asst. Attys. Gen., Augusta, for the State.

---

James M. LaLiberty (orally), Butler, Whittier & LaLiberty, P.A., Waterville, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

COLLINS, Justice.

In this appeal from his conviction by a Superior Court jury (Kennebec County; *Brody, C.J.*) of murder in violation of 17–A M.R.S.A. § 201(1)(A) (1983), Michael Baird argues that the presiding justice erred in admitting expert testimony that Baird possessed substantial capacity to appreciate the wrongfulness of his conduct, and that the evidence is insufficient to support the verdict. We affirm the judgment.

## I.

The facts developed at trial can be summarized as follows: At the time of the shooting on March 21, 1987 Baird was at the home of his brother, James "Larry" Baird, located next to a trailer in which the Defendant had lived with his girlfriend, Tina, and her mother, Hester, for approximately eleven years. Three days earlier Tina had told Baird that their relationship was over, that he would have to move out, and that she had become intimately involved with a mutual friend of theirs, the victim, Colby Shorey. Baird and Tina had had a similar conversation on the morning of March 21 at Larry's home after which Tina went out. Present at Larry's at the time of the shooting were Baird, the victim, Colby Shorey, Larry, Larry's wife, and Hester. After twice asking Larry where his two children were, Baird went into a small room off the kitchen where he and Larry kept their hunting rifles and ammunition purportedly to commit suicide. He held a rifle to his throat; however, when he heard the victim's laughter Baird entered the kitchen and shot him once through the heart.

After the shooting, Baird handed Larry a note, stating "this will explain everything." On the paper, in Baird's handwriting, appeared: "To whom it may concern. I went through with it once, not again. I'm sorry.

Michael David Baird." And on the other side: "My head won't take it." When Officer Davis of the Clinton Police Department arrived, Baird stated to him "take me, I did it," and put his hands out to be handcuffed. As Officer Davis led Baird from the house, Baird stated "I did it over some trouble we were having."

## II.

■ Baird contends that the presiding justice committed reversible error in admitting rebuttal testimony by the State's psychiatrist, Dr. Jacobsohn, that Baird possessed substantial capacity to appreciate the wrongfulness of his conduct at the time of the shooting. Specifically Baird argues that because he withdrew his insanity plea, the testimony was irrelevant and likely to cause prejudice and confusion.

Evidence regarding a defendant's mental state is admissible as provided by 17–A M.R.S.A. § 38 (1983) as follows:

Evidence of an abnormal condition of the mind may raise a reasonable doubt as to the existence of a required culpable state of mind.

In addition, evidence of a mental disease or defect is admissible pursuant to 17–A M.R. S.A. § 39 (1983 & Supp.1988) in order to prove lack of criminal responsibility:

§ 39. Insanity

1. A defendant is not criminally responsible if, at the time of the criminal conduct, as a result of mental disease or defect, he lacked substantial capacity to appreciate the wrongfulness of his conduct. The defendant shall have the burden of proving, by a preponderance of the evidence, that he lacks criminal responsibility as described in this subsection.

2. As used in this section, "mental disease or defect" means only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality....

We have recognized that the distinction between evidence of an abnormal mental state introduced to raise doubt about a

defendant's culpable state of mind, and evidence of a mental disease or defect introduced on the issue of insanity, is "somewhat subtle and elusive." *State v. Murphy,* 496 A.2d 623, 630 (Me.1985). Thus, the evidence used for the two purposes may overlap. *Id.*

In the present case, in support of Baird's contention that he did not possess the requisite mental state for murder, Baird's expert witness, Dr. Robinson, testified that at the time of the shooting Baird had entered a "dissociative state" which likely affected both his thinking ability and his capacity to control his actions toward the victim. Through Dr. Jacobsohn, the State on rebuttal sought to clarify this testimony and its relation to culpability. In doing so, the State made it clear that insanity was not an issue in the case. We find that it is highly probable that admission of this testimony did not affect the judgment. *State v. True,* 438 A.2d 460, 467 (Me.1981).

■ Viewing the evidence in the light most favorable to the State, we find that the jury rationally could find beyond a reasonable doubt that Baird was guilty of the offense charged. *State v. Barry,* 495 A.2d 825, 826 (Me.1985). Because we find that Baird's other contentions are without merit, we decline to address them here.

The entry is:

Judgment affirmed.

All concurring.