STATE of Maine

v.

**Christopher S. CALOR.**

Supreme Judicial Court of Maine.

Argued Nov. 15, 1990.

Decided Feb. 8, 1991.

Michael Povich, Dist. Atty., Ellsworth, Garry L. Greene (orally), Asst. Atty. Gen., Bangor, for the State.

William N. Ferm (orally), Ferm & McSweeney, Ellsworth, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

CLIFFORD, Justice.

Christopher S. Calor appeals from two orders entered in the Superior Court (Hancock County, *Delahanty, J.*) denying his motions for judgments of acquittal and a new trial following his convictions on eleven counts of gross sexual misconduct, 17–A M.R.S.A. 253(2)(G) (1983 & Supp.1990), and one count of unlawful sexual contact, 17–A M.R.S.A. § 255(1)(F) (1983 & Supp.1990). Calor contends, *inter alia,* that the Superior Court erred by (i) admitting evidence of out-of-court statements made by the victim during interviews with school counselors; (ii) admitting evidence of Calor's nine-year-old conviction of theft; (iii) admitting testimony from a physician's assistant when the report on which the testimony was based was not provided to Calor prior to trial; and (iv) describing the grand jury process in its instructions to the jury. Calor further contends that (v) there was juror misconduct; and (vi) his convictions of gross sexual misconduct were based on an inapplicable statute. Finding no error or abuse of discretion, we affirm the judgments.

Between February and July of 1986, Calor was a counselor at the Homestead Project, a residential treatment facility and school for emotionally handicapped students located in Ellsworth.[1] The male victim in this case, who was sixteen years old at the time, entered the Homestead Project in November 1985 because he had attempted suicide and was having problems with drugs and alcohol. Suspicious about the relationship that developed between Calor and the victim, Calor's supervisors at the Homestead Project, one of whom was Phillip Morrow, also a counselor, interviewed the victim in July of 1986. After initially refusing to tell about his sexual relationship with Calor, the victim eventually related the twelve incidents with which Calor was charged. At trial the victim testified that he had several sexual encounters with

---

1. The Homestead Project is a private, nonprofit corporation licensed by the Department of Educational and Cultural Services as a "special purpose school," by the Department of Mental Health and Mental Retardation as a "mental

Calor between April and July 1986.[2] The victim testified that Calor promised him that they could live together upon his completion of the Homestead program and that he would help the victim get through the program quickly.

## I.

■■■ We first address Calor's contention that Phillip Morrow's testimony concerning the initial statements made by the victim was improperly admitted at trial. Under *State v. True*, 438 A.2d 460 (Me. 1981), a victim's extra-judicial statements to a third party reporting a rape or sexual misconduct complaint are admissible as part of the State's case-in-chief. The details of the complaint are not admissible. *Id.* at 464–65; *State v. King*, 123 Me. 256, 258, 122 A. 578, 579 (1923). The statements are admissible to "forestall the natural assumption that in the absence of a complaint, nothing ... had occurred." *True*, 438 A.2d at 464. Morrow testified that the victim told him about his ongoing sexual relationship with an adult male from the end of April through mid-July. The court carefully limited Morrow's testimony by refusing to allow him to testify about the victim's identification of Calor and his description of the incidents. Even though the victim's statements regarding the sexual incidents were made in response to questioning, as opposed to being completely spontaneous, this does not render them inadmissible under *True*.

## II.

■■■ Calor further argues that the fact of his previous conviction for theft[3] should not have been admitted in evidence. Under M.R.Evid. 609, evidence of a prior convic-

tion (not more than fifteen years old) involving false statements or dishonesty is admissible on the issue of witness credibility if the probative value of the evidence outweighs the prejudicial effect to the defendant.[4] *State v. Grover*, 518 A.2d 1039, 1040 (Me.1986). The category of the offense determines whether it involves dishonesty or false statement, and acts of theft are generally regarded as conduct reflecting adversely on honesty and integrity. *Id.* at 1041. The court acted within its discretion in concluding that the probative value of the evidence on the issue of Calor's credibility was not outweighed by the prejudicial effect to Calor, and in admitting evidence of Calor's prior theft conviction.

## III.

■■■ At trial, the victim described certain marks and features of Calor's anatomy. A physician's assistant who had examined Calor also testified regarding the location of moles and freckles on Calor's abdomen. The physician's assistant had made a report at the time he examined Calor, but did not have it with him when he testified at trial. Contending that the report differed from the physician's assistant's trial testimony, and that he did not obtain a copy of it until after the trial, Calor moved for a new trial based on newly discovered evidence.

■■■ To succeed on a motion for a new trial based on newly discovered evidence, the defendant must establish that the new evidence (1) will probably change the result if a new trial is granted; (2) has been discovered since trial; (3) could not have been discovered before the trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or im-

---

health facility," and by the Department of Human Services as a "child care facility."

**2.** Except for one encounter in Washington County, the incidents occurred in Hancock County. Calor consented to proceed by way of information on the charge arising out of the incident in Washington County. *See* M.R. Crim.P. 7. Venue was changed to Hancock County and the charges were consolidated.

**3.** Calor was convicted of theft in Superior Court in Hancock County on March 19, 1979.

**4.** Effective April 16, 1990, M.R.Evid. 609 was amended to further stress that the "only legitimate basis for admission of a prior criminal conviction under this rule is the inference that a person convicted ... of specific kinds of crimes might not be truthful in testimony." M.R.Evid. 609 advisory committee's note to 1990 amend., Me.Rptr., 563–575 A.2d CIII.

peaching, unless it is clear that such impeachment would have resulted in a different verdict. *State v. Murray*, 559 A.2d 361, 362 (Me.1989).

The purpose of the testimony of the physician's assistant was to corroborate the testimony of the victim as to the presence of moles and freckles on Calor's abdomen. Even if the physician's assistant was incorrect about the location of the freckles, as Calor contends, Calor had already made that apparent by showing the jury the exact location of the marks on his abdomen. The evidence did not compel a finding by the court that were the report used at a new trial, a different verdict would probably result. Moreover, Calor's counsel was present during the physical examination of Calor by the physician's assistant and the court was not compelled to find that Calor, through the exercise of due diligence, could not have obtained a copy of the report before the trial. The denial of the motion for a new trial based on newly discovered evidence was well within the court's discretion. *Murray*, 559 A.2d at 362.

### IV.

▇▇▇ Calor next argues that he was incurably prejudiced when, during its instructions to the jury, the court mentioned that Calor had been indicted by a grand jury.[5] Specifically, Calor contends that by informing the jury that the grand jury returned an indictment against Calor, the court was in effect suggesting that the indictment had evidentiary significance.

That a person is presumed innocent, and that the presumption remains to protect a defendant until the state proves guilt beyond a reasonable doubt at a trial, is a principle firmly rooted in our system of jurisprudence. *See Taylor v. Kentucky*, 436 U.S. 478, 484, 98 S.Ct. 1930, 1934, 56 L.Ed.2d 468 (1978). The fact that a defendant has been charged with a crime is not to be considered evidence of anything by the factfinder and, accordingly, juries are routinely so instructed. *See* Alexander, *Manual of Jury Procedures and Instructions for Maine* § 3–1, at 6–8 (1990). Although a traverse jury must be informed of the charges against a defendant, and the charges may be read, it should be of no concern to that jury that the document charging a defendant is a complaint, *see* M.R.Crim.P. 3, an information, or an indictment, *see* M.R.Crim.P. 7. It is therefore unnecessary and potentially prejudicial for a court to inform a traverse jury that the charge against the defendant has been passed upon by a grand jury, another factfinding body. *Cf. State v. Chase*, 490 A.2d 208, 210–11 (Me.1985). In this case, however, the court's reference to the grand jury, when viewed in the light of the court's curative instruction to the jury that the indictment was not to be considered as evidence of guilt whatsoever and that the jury was to draw no inference from it, constitutes harmless error. Viewing the jury instruction in its entirety, it is " 'highly probable that the error did not affect the judgment.' " *State v. Goodridge*, 556 A.2d 211, 212 (Me.1989) (quoting *State v. Huff*, 469 A.2d 1251, 1253–54 (Me.1984)). The court did not abuse its discretion in denying Calor's motion made at trial for a mistrial, and his post-trial motion for a new trial, both based on the reference to the grand jury.

5. The court instructed the jury that "this indictment was returned by a grand jury and the grand jury heard only the evidence presented by the state . . ." and that the indictment is only an accusation and not evidence of guilt. Calor objected and requested a mistrial. The court denied the request for a mistrial and gave the following curative instruction:

> [Y]ou also recall ... that in an earlier part of my charge, I referred to the fact that the defendant is charged by way of indictment and that you should draw no inference from the fact that an indictment had been filed against the defendant. It's not evidence and

should not be treated as such and by itself it proves nothing. I also mentioned that the grand jury hears only the evidence that is presented by the State. I want to tell you that, in addition to that, the defendant is not present at the grand jury nor is his attorney. There is no judge there. The standard of proof in front of a grand jury is totally different, and in fact the verdict or decision of a grand jury doesn't even have to be unanimous as yours does, and their function is entirely different from yours. And that's the reason for mentioning it. So you should not be influenced by that in any way.

## V.

 Although Calor makes reference to three separate incidents involving the conduct of jurors,[6] he has preserved for appeal only one of them. The trial court held a hearing on Calor's motion for a new trial based on juror misconduct. There was evidence that during the trial, the brother of one of the jurors mentioned to the juror that he had heard that there was "overwhelming evidence" against Calor. The juror did not comment except to say that he could not discuss the case. The court found that the juror's impartiality had not been affected by the comment and denied the motion. That finding is not clearly erroneous. *See State v. Royal*, No. 5641, slip op. at 4 (Me. Dec. 14, 1990). The denial of the motion for a new trial was within the court's discretion.

## VI.

 Calor was convicted of eleven counts of gross sexual misconduct pursuant to 17–A M.R.S.A. § 253(2)(G), as a teacher, employee or other person having instructional, supervisory or disciplinary authority over the victim at Homestead Project. He contends those convictions were wrongful because Homestead Project is not a facility or institution as described in section 253(2)(G). That section provided:[7]

(2) A person is guilty of gross sexual misconduct if that person engages in a sexual act with another person and:

. . . .

G. The other person, not the actor's spouse, has not in fact attained the age of 18 years and is a resident in or attending a children's home, day care facility, residential child care facility, drug treatment center, camp or similar school, facility or institution regularly providing care or services for children, and the actor is a teacher, employee or other person having instructional, supervisory or disciplinary authority over the other person. . . .

Calor argues that the Homestead Project is a school or educational facility within the meaning of section 253(2)(F),[8] and not an institution or facility within the meaning of section 253(1)(G). He contends that because sections 253(2)(F) and 253(2)(G) are mutually exclusive, his convictions for gross sexual misconduct as a teacher, instructor or supervisor could be upheld only under section 253(2)(F),[9] and his convictions under section 253(2)(G) must be vacated. We disagree.

Although there was evidence that Homestead Project is licensed as a "special purpose school" and has an educational mission—students can earn credits toward a diploma but it is not a diploma-granting school—it is also licensed by the Department of Mental Health and Mental Retardation as a "treatment facility," and by the Department of Human Services as a "child care facility." *See supra* note 1. Contrary to Calor's contentions, section 253(2)(F) applies to more orthodox full-time schools, while Homestead Project, with its multipurpose functions, more appropriately fits within the definition of section 253(2)(G). Moreover, there is no indication that the legislature intended these sections to be mutually exclusive. Calor's convictions of

---

**6.** Neither of the two unpreserved juror misconduct incidents constitutes obvious error affecting substantial rights. *See* M.R.Crim.P. 52(b).

**7.** P.L.1989, ch. 401, § A, 4 repealed and replaced 17–A M.R.S.A. § 253 and changed the crime of gross sexual misconduct to gross sexual assault.

**8.** 17–A M.R.S.A. § 253(2)(F) provided:
(2) A person is guilty of gross sexual misconduct if that person engages in a sexual act with another person and:
. . . .

F. The other person, not the actor's spouse, has not in fact attained the age of 18 years and is a student enrolled in a private or public elementary, secondary or special education school, facility or institution and the actor is a teacher, employee or other official having instructional, supervisory or disciplinary authority over the student.
*See supra* note 7.

**9.** Calor concedes that 17–A M.R.S.A. § 255(1)(F) was the appropriate section for the charge of unlawful sexual contact.

gross sexual misconduct pursuant to section 253(2)(G) were appropriate.

We have examined Calor's additional contentions, namely that 17–A M.R.S.A. § 253(2)(G) violates his constitutional rights of equal protection, freedom of association and due process, and that there was insufficient evidence to support the convictions of gross sexual misconduct, and find them to be without merit.

The entry is:

Judgments affirmed.

All concurring.