Knox. S.S., Clerks Office
SUPERIOR COURT

RECEIVED AND FILED
Susan Guillette, Clerk

DONALD L. GARBRECHT
LAW LIBRARY

AUG 7 2082

STATE OF MAINE

KNOX, ss.

AUG 2 2002

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-99-340

RONALD I. ROBBINS, SR.,

     Petitioner

    v.

STATE OF MAINE,

     Respondent

**DECISION AND ORDER**

This matter is before the court on the petitioner's Amended Petition for Post-Conviction Review of his convictions on multiple counts of Gross Sexual Assault, 17-A M.R.S.A. § 253, and Unlawful Sexual Contact, 17-A M.R.S.A. § 255. The petitioner's claim in support of his request for post-conviction relief is that he was denied effective assistance of counsel at trial. This claim is expressed in two grounds which identify alleged shortcomings in trial counsel's performance which, the petitioner says, entitle him to relief, presumably a new trial.

Ground one of the petition alleges that trial counsel, Lawrence Frier, Esq., was ineffective "by failing to conduct a reasonable pretrial investigation of the facts of the case and interview petitioner's witness." The testimony at the hearing of this matter and the record found in the case file provide no support for this claim.

Mr. Frier applied for, and received, authority to expend $500 in State funds to retain a private investigator. He did so, and the investigator devoted five and one-half hours to investigating this case and providing a report to Mr. Frier.[1] Indeed, this attorney's assigned counsel voucher shows that he met with the investigator eight

---

[1] This figure comes from the private investigator's bill and does not include the time used to consult with Mr. Frier, serve subpoenas, or attend trial.

times and had numerous telephone conversations with him concerning this case. Moreover, counsel successfully sought to inspect DHS records concerning potential abuse of the alleged victims by alternate suspects, and, according to his voucher, spent over two hours reviewing these records.

Trial counsel also personally interviewed eight potential defense witnesses. Among them was Ralph Woodbury who, the petitioner claims, was subpoenaed to testify at trial but did not appear. According to trial counsel, however, Woodbury told him that he would 'burn" the defendant. The court has no reason not to believe this representation which is corroborated, in part, by his voucher which shows that Mr. Frier talked with Mr. Woodbury the day before trial.

The voucher and Mr. Frier's testimony at hearing demonstrate that he and his investigator performed considerable pretrial work to develop the defense advocated by the defendant himself, namely that his wife had instigated these complaints and that the acts of sexual abuse at the defendant's house could not have occurred without being discovered because of its close quarters, lack of doors on the rooms, and the many visitors to the house. Indeed, it also appears from the voucher that Mr. Frier visited this house twice and took pictures to assist him in supporting this defense theory.

From all of this, the court must conclude that trial counsel's performance as to his pretrial investigation did not fall below that of "an ordinary, fallible attorney," *State v. Brewer*, 1997 ME 177, ¶¶ 16-17, 699 A.2d 1139, 1144. Indeed, Mr. Frier's efforts in this regard were thorough and professional. It must therefore be found that ground one of the amended petition is meritless.

The petitioner's second ground on which he bases his claim for relief is that his trial attorney was ineffective "by failing to object to repeated instances of hearsay and ignoring rules of evidence to the prejudice of petitioner."

These alleged failures apparently take the form of the admission into evidence of hearsay statements, an expert's opinion, and the defendant's criminal record.

There appears to be several aspects to the hearsay grievance. The first of these is the admission in evidence of the testimony of Dr. Lawrence Ricci who testified as to his physical examination of the two victims in this case, Natasha and Nadia Clement. He testified that Nadia told him that she had experienced penetration of her vagina with a finger and a penis on multiple occasions which was consistent with Dr. Ricci's finding of a thinning of the border of her hymen.

Dr. Ricci testified that Natasha told him that she had experienced contact with her vagina by a penis and a hand, but was unclear as to whether or not there had been penetration. On physical examination, the doctor found that although Natasha did not have the thinning of her hymen as Nadia had, she did have tissue missing in the hymenal border which is consistent with trauma.

Dr. Ricci testified that the statements the girls gave him were for the purposes of medical diagnosis. Nothing in the record would cast any doubt on that representation; indeed, the purpose of his examination and testimony was to describe and explain injuries or abnormalities he may have found in his examinations of the girls' genitals. As such, his testimony was plainly admissible, M.R. Evid. 803(4); *State v. Hebert*, 480 A.2d 742, 748-49 (Me. 1984), and any objection to this testimony would have been baseless.

3

The petitioner also argues that the chain of statements originating with Natasha and Nadia which revealed that they had been abused should also have been challenged as hearsay. Thus, at trial, Grace Barter, another child, testified that the girls had told her that someone "was hurting them." T., p. 153. Grace, in turn, relayed this information to her mother, Deborah Walters, who briefly interviewed the two girls and asked them if "he" had been touching them to which she received nods of their heads in reply. Ms. Walters then asked Lori Black, the girls' mother, to come to her house because "the girls have something to tell you." T., p. 160. Ms. Black did not testify as to what Ms. Walters or her daughters told her, but did testify that as a result of what they told her she went to the doctor's office and DHS.

Nadia and Natasha confirmed in their testimony that they first revealed the sexual abuse they had been suffering by telling their friend Grace, resulting ultimately in their revealing to their mother what had happened. According to Nadia, it was at this time that she first learned that Natasha was also being abused.

In Maine jurisprudence, there is a "first complaint" rule which allows in evidence hearsay statements concerning "the bare fact that a complaint has been made but not further details." *State v. Tripp*, 634 A.2d 1318, 1321 (Me. 1994). The purpose of allowing such testimony is to forestall "the natural assumption that in the absence of a complaint, nothing [untoward] had occurred." *State v. True*, 438 A.2d 460, 464 (Me. 1981). No details of the complaint are permissible except as necessary "to identify the complaint as being relevant to the charge on which the accused is being tried." *Id.* at 465. "In particular, statements of the perpetrator's identity are not allowed." *State v. Tripp*, 634 at 1321.

4

The statements cited here do not run afoul of these rules. None of them provide any details of the sexual abuse except that the girls said they had been hurt or had been touched. These statements are admissible because they place the girls' complaints within the context of the pending charges. *State v. True*, 438 A.2d at 465. Moreover, none of the statements identify the defendant as the perpetrator of the abuse, except the indefinite reference to "he" in Ms. Walters' question to the girls. "He," of course, could be any male, and the use of this pronoun did not violate the rule against identifying the person accused of the assault in such hearsay statements. *State v. Tripp*, 634 A.2d at 1321.[2]

Moreover, this testimony, at least as to Nadia's and Natasha's statements to Grace, was relevant evidence to explain the delay in reporting the assaults and to corroborate the girls' fear of the defendant. T., pp. 71-73. In this light, the non-specific reports of abuse to Grace were also admissible because they could be considered for this purpose and not to establish the truth of the matters asserted. The testimony of Deborah Walters and Lori Black corroborate this, in part, because it demonstrates when and why the investigation began.

In sum, all this testimony was admissible and experienced trial counsel would have understood that objecting to it would have served little purpose.

The petitioner also alleges that his trial counsel was deficient in failing to object to or challenge the testimony of Joanne Cook who counselled Nadia and Natasha. She offered testimony as to how children disclose abuse and why there may be delay in such disclosures if a parental figure is involved. Mr. Frier offered that his decision not

---

2 Dr. Ricci's testimony concerning the statements the girls made to him also did not include the identity of the perpetrator.

5

to cross-examine this witness was based on his experience with her in other cases and his concern where her testimony might go. The evaluation of potential witnesses is a matter "left to the professional judgment of the attorney." *State v. Brewer*, 1997 ME 177, ¶ 25, 699 A.2d at 1146. More importantly, Ms. Cook's testimony was admissible as an expert explanation of the reporting delay as to which objection would have been futile. *State v. Black*, 537 A.2d 1154, 1157, n.1 (Me. 1988).

Last, the petitioner complains that his attorney did not object to the admission in evidence of his criminal record. The trial record, however, demonstrates that it was the defendant himself who made the jury aware of his criminal past by offering this information in his testimony without being asked about this topic. T., vol. 2, pp. 46, 50, 55, 57. Thus, any prejudice which may have affected the petitioner's right to a fair trial originated with him.

In addition, attorney Frier testified at the hearing on this matter that the topic of the defendant's criminal record was discussed in chambers with the trial judge who had excluded the defendant's most recent OAR[3] convictions. While it would have been better practice to have made sure this chambers debate was recorded, the court has no basis to disbelieve Mr. Frier's testimony that the admissibility of the defendant's criminal record was contested. Finally, the Law Court has already ruled that there was no error in this case by allowing the defendant's criminal record in evidence. *State v. Robbins*, Mem. 00-90. From this, it cannot be concluded that the petitioner suffered from ineffective assistance of counsel by virtue of his criminal record being admitted in evidence.

---

[3] Operating After Revocation, 29-A M.R.S.A. § 2557.

In the end, this court cannot find that petitioner's trial counsel provided him with ineffective assistance. While it is true that he did not object to certain hearsay testimony, an examination of that testimony demonstrates that it was all likely to be admitted by the trial judge and that objection would have been legally futile. Certainly evidentiary objections can be made in the hope that they might meet with success, but where, as here, the testimony was not improper, the risk of making objections that are unlikely to succeed is that a jury can be alienated by the interruption of testimony particularly when the objection is found to be meritless by the judge. This court, then, cannot base a finding of ineffective assistance of counsel on the speculation that a legally baseless objection might bear fruit so that potentially damaging evidence might not have been admitted. Instead, the court must find that the petitioner has failed to establish that his trial counsel's performance fell below that of an ordinary fallible attorney which is indispensable to his claim that he was denied effective assistance of counsel so that post-conviction relief may be afforded. That being so, the court need not address the issue of whether or not the petitioner was prejudiced by his attorney's performance, the second prong of the two-part test which must be satisfied before a petition may be granted on the basis of this type of claim. *State v. Brewer*, 1997 ME 177, ¶¶ 15-20, 699 A.2d at 1143-44.

Accordingly, the entry must be:

Amended Petition is DENIED.

So ordered.

Dated: August___1___, 2002

John R. Atwood
Justice, Superior Court

7

STATE'S ATTORNEY:
Geoffrey Rushlau, Esq.
District Attorney
Knox County Courthouse
62 Union Street
Rockland, ME 04841-2229

DEFENDANT'S (PETITIONER'S) ATTY:
David Paris, Esq.
72 Front Street
Bath ME  04530